THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIM W. KREIDER**, | **CIVIL ACTION** |
| v. | **No. 24-4288** |
| **GREEN ROBIN HOMES, LLC, et al.**, | |

**Henry, J.** s/CH                                          **June 3, 2025**

## MEMORANDUM

Tim Kreider contracted with Green Robin Homes to rebuild his home for about $390,000, with a projected timeline of 6 months. More than four years later, and having sunk more than $660,000 into the project, Kreider thought the builder had stretched the agreement so far that it was not just breached but fraudulent in the first place. As mandated by the contract, he sought compensation through arbitration proceedings. Yet, rather than appearing and defending its work, Green Robin Homes essentially ignored the arbitration demand. Kreider considered that the builder was now waiving its right to arbitration, placed the arbitral proceeding on pause, and brought his claims in this Court, against the builder and its two principals. Before me are a motion to dismiss by Green Robin Homes and another by the individual defendants. The motions are brought on several grounds. For the reasons that follow, I deny them both in full.

1

I.    **BACKGROUND**[1]

In early 2020, Tim Kreider made a deal to rebuild his home in Perryville, Maryland from the ground up. He contracted with Green Robin Homes, LLC ("GRH") to demolish the present structure and build a new one based off a prefabricated module.

According to the contract, Kreider would pay with the progression of the work, eventually summing to a price of $390,133. GRH was to "diligently endeavor to substantially complete" the project within 180 days, but the contract specified that the timeline was only a good faith estimate and could be affected by several kinds of legitimate delays. (GRH would also not be liable for any delays in and of themselves.) A provision on change orders dictated that changes requested by Kreider would be reduced to writing, but that no other "alteration, addition, omission, or change shall be made" to the final home "or the method or manner" of building. A separate provision on the "Builder's Right to Vary" permitted GRH, if it was unable to obtain "certain materials," to substitute others, or make other changes "as may be required, in the exercise of [its] reasonable judgment, by material shortages or other such causes or emergency situations reasonably beyond [its] control."

Although Kreider told the Defendants that his budget was "not flexible," he pleads that "they had no intention of honoring the prices," and that the contract bid was falsely constructed to undercut competitors as a "bait-and-switch." Kreider points out several aspects of the construction that went way over projected costs. For instance, the module that would form the main structure of the new home was listed with an "allowance" of $255,393 in the contract's Exhibit D on progressive payments, and an invoice for that amount was initially sent in 2020. In June, 2022,

---

[1] At this level, I accept the factual content of the complaint as true. *See infra* § II. When I refer to "the complaint," I mean the complaint as amended, filed at ECF 12.

Bieber and Nellius prepared a second invoice for the same module, reflecting a "factory increase" of "29%" in the amount of $89,564—a misstatement on its face, since that was an increase of more than 35%. Although the Defendants did not offer any proof of this increase (the 29% or the 35%) having originated with the supplier, Kreider paid the additional amount. Similar partially explained increases followed for nearly 150% to the price of the foundation, more than 150% to the price of additional site work, more than 500% for sliding doors, more than 180% for the HVAC system, and more than 400% for siding. In the case of the HVAC and siding, the improvements were not actually installed. As for kitchen tiles, Bieber and Nellius prepared a change order for an increase of more than 250%. When they requested a change order for a curtain rod for $828.28, Kreider rejected it.

In March, 2024, after the issue with the kitchen tiling, Kreider requested a breakdown of the labor costs he was incurring. A representative of GRH instead offered a 10% discount. When Kreider reiterated that his request was about transparency, the representative said, "We have gone to a cost-plus business model in the last 6 months" for any new invoices and change orders, then never responded with invoices or bids as to work already done.

The contract did not refer to any parties other than Kreider and GRH, but Kreider pleads that Bieber and Nullius were responsible for both its original deficiencies and for the alleged breaches. He states on information and belief that Bieber and Nellius were the LLC's only members, and his complaint pleads that they (rather than GRH or any other workers) were the agents of essentially every allegation.

The contract also had an arbitration clause requiring its parties to submit to binding arbitration. It required the party demanding arbitration to first serve a written notice of its grievances on the other party, after which the responding party would answer with at least 10

potential arbitrators. Kreider sent a general demand letter on March 27, 2024, then an arbitration demand letter on April 15, 2024. When GRH failed to respond within 20 days as contemplated in the contract with the names of any arbitrators, Kreider moved on to the provision for "the event that parties cannot agree on any of the potential arbiters [*sic*]," which dictates that "the matter will be submitted to the American Arbitrator [*sic*] Association." On May 21, 2024, he filed the demand with the American Arbitration Association (AAA) and paid its initial fee of $2,900. Under the terms of the contract, the arbitration was to be held within sixty days of the arbitrator's accepting the appointment. On July 8, 2024, Kreider served GRH with a notice terminating the agreement.

Since GRH had responded to neither Kreider nor the AAA, an arbitrator was selected in its absence. Kreider moved to join Bieber and Nellius at arbitration, but because they were not individually bound by the contract, the request was conditioned on their consent. Only July 19, 2024, Defendants' counsel appeared and objected by email to arbitration by AAA: First, because GRH "never agreed to submit any disputes . . . before the American Arbitration Association," noting that "the words 'American Arbitration Association' do not appear anywhere in the contract"; and second, because the individuals were not themselves parties to the contract and therefore bound by the arbitration clause. Having lodged the objections, Defendants ceased communication with Kreider and the AAA.

In Defendants' absence, the arbitration proceeded, at least temporarily. On July 25, 2024, Kreider filed a response to the objections. The arbitrator requested a clarification from GRH as to its objection and received none. On August 6, 2024, arbitrator Tarrant H. Lomax issued an order determining that the AAA was the proper venue for arbitration. On August 12, 2024, the AAA set a preliminary hearing for August 23, 2024 by telephone to "set expectations and establish procedures and a schedule for the proceedings." Defendants' counsel (and Defendants) did not call

in to the hearing. In the respondents' absence, Kreider's counsel advised the arbitrator that he had filed a complaint in the present case in federal court the week prior, and therefore requested that the matter be placed in abeyance. Lomax granted the request.

A first complaint was filed in this Court on August 16, 2024. After GRH and the individual defendants filed motions to dismiss, Kreider filed an amended complaint on October 4, 2024. (In January, 2025, the case was reassigned to me.) Shortly before this opinion issued, Kreider supplied the court with a supplemental letter offering information about a news report that GRH had separately refused to arbitrate a similar case. Kreider acknowledged that there was essentially no valid evidentiary use of this report in its case but advised that he was reaching out to the other family allegedly harmed. Later the same day, counsel for the Defendants wrote to object to Kreider's letter as inappropriate.

Before me now are the motion to dismiss filed by GRH and another by the individual defendants Bieber and Nellius.

## II.  <u>LEGAL FRAMEWORK</u>

All three defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, but GRH additionally moves under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and (b)(3) for lack of proper venue.

Personal jurisdiction is a threshold matter that must be resolved before considering the merits of the pleadings. *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 229–30 (3d Cir. 2002). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). If an evidentiary hearing is not held, a plaintiff need only show a prima facie case by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav.*

& *Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987). While this burden is not a heavy one, a plaintiff may not "rely on the bare pleadings alone" but must provide actual proof by competent evidence rather than mere allegations. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Venue for a civil action is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" 28 U.S.C. § 1391(b)(1).

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are considered under the standard set forth in *Fowler v. UPMC Shadyside*: First, the Court separates all well-pleaded facts from the legal elements of a claim. 578 F.3d 203, 210–11 (3d Cir. 2009). The Court must then decide whether those facts, accepted as true, "show that the plaintiff has a plausible claim for relief." *Id.* (quotation marks omitted). The "plausibility determination" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). The requirement to state a claim "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks and citations omitted). The rule "does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Id.* (quotation marks omitted).

In considering a motion to dismiss under Rule 12(b)(6), I consider "only the allegations contained in the pleading to determine its sufficiency." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016). Where matters outside the pleadings are presented to and not excluded by court, the motion must be treated as requesting summary judgment. Fed. R. Civ. P. 12(d).

## III. <u>DISCUSSION</u>

The individual defendants and GRH are not identically situated, and their motions are premised on very different grounds. Nevertheless, it will serve to address them together, as they result from the same underlying dispute and at least purport to give overlapping defenses.

### A. Personal Jurisdiction, Venue, Collateral Estoppel, "Duplicitous Litigation," "Pending Prior Action," and Incorporation by Reference

I begin by addressing objections to personal jurisdiction and venue, since they are threshold considerations once raised. I will also address Defendants' attempts to defend using collateral estoppel, "duplicitous litigation," and "pending prior action" to dismiss, as well as their suggestion of incorporation by reference.

First, GRH moves to dismiss by claiming that the plaintiff failed to establish the Court's personal jurisdiction over it. *See* Fed. R. Civ. P. 12(b)(2). Its only argument on this issue, lacking any citations to authority, is that the contract includes a binding arbitration clause. No discussion is offered as to how this clause affects the matter of personal jurisdiction. GRH does offer *Miller Yacht Sales, Inc. v. Smith* in its Standard of Review section, noting that, "[a]s in all civil litigation, the plaintiff bears the burden of establishing this Court's jurisdiction over Defendant." 384 F.3d 93, 97 (3d Cir. 2004).[2] But only shortly beforehand, GRH's own Statement of Facts declared that "Defendant [GRH] is a Pennsylvania limited liability company headquartered in Pennsylvania. (Amended Complaint ¶ 9.)" GRH Memo. 2–3, ECF 13-2 at 1–2. First, that fact certainly seems to

---

[2] Judges in this district "have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because 'zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court.'" *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 511 n.8 (E.D. Pa. 2007). I acknowledge that GRH offers this quotation from *Miller Yacht Sales, Inc.* in its standards and again in its argument. GRH Memo. 6–7, ECF 13-2 at 9–10.

suggest the "consistent and systematic" contacts with Pennsylvania that subject it to my personal jurisdiction therein. *Miller Yacht Sales*, 384 F.3d at 96 (citation omitted).[3] Second, GRH's own citation to the complaint itself demonstrates that the Plaintiff adequately offered the factual content of the contacts. Additionally, consent to personal jurisdiction may be implied by the agreement's clause on using Pennsylvania law. *St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001). For his part, Kreider does not seriously contend with GRH's motion under Rule 12(b)(2), summarily citing the central case *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945) and another later case. That is more than sufficient, since as he puts it, "[t]here is no question." Resp. to GRH, ECF 16 at 15. I agree.

Next, GRH moves to dismiss because it claims that venue is improper under 28 U.S.C. § 1406. Once again, it offers authority for the burden but not for the substance of the analysis. Instead, GRH argues that that this Court is the wrong venue "because the agreement requires that the matter be brought to arbitration, which the Plaintiff did initiate against GRH." GRH Memo. 9. It also refers to Kreider's own statement that "[b]y Order dated August 6, 2024, the arbitrator determined that the AAA was the proper venue for the dispute." *Id.* (citing Compl. ¶ 184). GRH then argues that, since there is no personal jurisdiction, the statute governing venue does not apply. For this, it cites 28 U.S.C. § 1391(b)(3), a savings clause that permits venue wherever the court has personal jurisdiction "if there is no district in which an action may otherwise be brought." Again, Kreider hardly responds, simply citing the relevant clause in Section 1391(b)(1), permitting suit in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." And again, according to GRH's own statement of facts, the

---

[3] I need not address specific personal jurisdiction, since general personal jurisdiction is adequately shown in the place where a company can be "fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Defendants are all residents of Pennsylvania. "Similarly, there is no real question," as Kreider puts it. Resp. to GRH 10, ECF 16. And again, I agree. Like "jurisdiction," another term with a specific legal meaning under the Rules is "venue," and GRH's use of the latter is disconnected with the Rules' and my use.[4] Under 28 U.S.C. § 1391(b)(1), since all defendants are residents of Pennsylvania, and since at least one of the defendants lives within the Eastern District, venue is appropriate here.

GRH also claims that the Court should either dismiss or transfer the case because of collateral estoppel.[5] As GRH sees it, the arbitration matter already resulted in an order that "the appropriate venue for this matter is in arbitration." This mischaracterizes the order, which did not concern the question of whether the parties agreed to submit to arbitration rather than court adjudication, but whether any arbitration should be conducted by AAA.[6] Kreider argues that for GRH to successfully preclude the issue, the issue must be "identical to the [issue] presented" here. Pl's Resp. to GRH 16 (quoting *Adelphia Gateway, LLC v. Pa. Env't Hearing Bd.*, 62 F.4th 819, 826 (3d Cir. 2023) (quotations omitted).[7] I agree that this issue has not been litigated, and an issue

---

[4] GRH's motion could be construed as a motion to transfer venue, suggesting that "transfer" or "remand" to arbitration is the remedy contemplated under the Federal Arbitration Act at 9 U.S.C. § 4. This motion fails at the outset for the same misunderstanding of venue. For instance, it fails to identify "any other district" where the case could have been brought. 28 U.S.C. § 1404(a).

[5] GRH raises the "duplicitous litigation doctrine" and the "pending prior action doctrine," apparently in the alternative to collateral estoppel. GRH Memo. 10. It provides neither standards for review, citations to authority, nor discussion. In its Reply, GRH for the first time raises the doctrine of *lis pendens*. As none of these are substantially raised or argued, I deny dismissal on those grounds.

[6] As part of its response brief, Kreider attaches the arbitral order. For the purposes of Rule 12(b)(6), I am constrained to reviewing the pleadings themselves. Nevertheless, I find that ¶ 184 ("By Order dated August 6, 2024, the arbitrator determined that the AAA was the proper venue for the dispute.") can reasonably be read in the Plaintiff's favor as alleging that the arbitral order only concerned the proper forum for arbitration.

[7] Relying on *Adelphia Gateway*, Kreider argues that the prior adjudication must also have "resulted in a final judgment on the merits," among two other necessary conditions. *Id*. GRH in

that has not been litigated cannot be precluded. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480 (1982) (requiring "full and fair opportunity" to litigate in the first instance).

Finally, GRH attempts to incorporate all the arguments from the individual defendants' motion to dismiss "to the extent that any argument therein is applicable here." GRH Memo. 14. It cites Fed. R. Civ. P. 10(c), which it says allows "[a]ny part of a pleading [to] be incorporated by reference in another part of the same pleading or in another pleading in the same action." *Id*. Kreider objects, arguing that this appears to contravene our Local Rule 7.1(c) and the page limit of the Court's Practices and Procedures, in addition to stretching the meaning of "statement in a pleading" to include "arguments in a motion." At the outset, GRH provided incorrect language for Fed. R. Civ. P. 10(c), substituting Pennsylvania state court procedures under 231 Pa. Code § 1019(g). I will grant that the gist is the same. Regardless, "pleading" is defined under Fed. R. Civ. P. 7(a) and consists in this case of the complaint and the answer. The "pleadings" do not include, for instance, motions and briefing. *See* Rule 7 (giving a definite list of what are "[p]leadings" followed by a separate section on "[m]otions and [o]ther [p]apers"). Therefore, Rule 10(c) does not permit incorporation of arguments. Even if it did, I follow Kreider' suggestion to "decline the invitation" to search through the codefendants' motion for arguments that might avail themselves to GRH. Resp. to GRH 23. *See* Local R. 7.1(c) (requiring "a concise statement of the legal contentions and authorities relied upon in support").[8]

---

reply adopts the same four element test and concedes that final judgment is lacking here. GRH Reply 13. It is possible to question whether a final judgment is necessary for arbitral orders to have collateral estoppel. Rather than attempt this argument, GRH argues that since "three of the four elements necessary for collateral estoppel are met," I should use my discretion to paper over the missing fourth necessary element. GRH Reply 13. I cannot do that.

[8] Evidently conceding the incorporation argument, GRH finally argues in its Reply that the Court may "take judicial notice of facts (and arguments) alleged in the Co-Defendants' Motion to Dismiss" in its discretion. For this, it cites Fed. R. Evid. 201 regarding "a fact that is not subject to reasonable dispute." GRH offers no reason why its parenthetical, "(and arguments)," would

### B. Whether GRH Can Compel Arbitration, or Whether It Has Waived That Right

Having survived the previous issues, the analysis can approach the apparent substance of the matter: Can Kreider escape the mandatory arbitration clause in the agreement? Or can GRH instead force Kreider back to arbitration? I begin by analyzing the sufficiency of GRH's demand to return the case to arbitration. Although I find that it did not make such a demand, I also question in the alternative whether the arbitration clause retains operation at this point.

#### i. Whether GRH Moved to Compel Arbitration

It is unclear at first whether GRH itself has moved the Court to compel arbitration in the present case. On one hand, GRH's motion and memo repeatedly move to dismiss on the premise that the case should be returned to arbitration. On the other hand, GRH's actual language seems committed to a different theory of how and why the case should return to arbitration, and despite clear awareness of the available method for demanding as much, it never pulls the trigger.

The Federal Arbitration Act states that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction" in these circumstances. 9 U.S.C. § 4. Upon such a petition, the court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," order the parties to continue in arbitration. *Id.* Notably, a successful motion to compel arbitration under Section 4 does not then dismiss the case but *stays* the action pending arbitration. *Id*. § 3 (court "upon being satisfied that the issue involved in such suit or proceeding is referable

---

not flip the rule on its head. Rule 201 offers an opportunity to enter "a fact that is not subject to reasonable dispute." Arguments are not facts, and they are the essence of a reasonable dispute, so Fed. R. Evid. 201 will not assist.

to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had"). In the Third Circuit, a motion to dismiss will be construed as a motion to compel arbitration where that's what it "effectively" was, based on the motion's "substance . . . and not its form." *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 504–05 (3d Cir. 2023) (analyzing for the purpose of appellate jurisdiction over a § 4 denial, notably where the district court lacked the ability to compel arbitration because of venue), *cert. denied sub nom. Wilmington Tr., N.A. v. Henry on Behalf of BSC Ventures Holding, Inc.*, 144 S. Ct. 328, 217 L. Ed. 2d 171 (2023).

GRH's filing consists of a brief motion, a memorandum of law, and a proposed order. First, the motion is styled as "DEFENDAT [*sic*] GREEN ROBIN HOMES, LLC'S MOTION TO DISMISS DUE TO LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE REMAND TO ARBITRATION." ECF 13 at 1. It requests dismissal for several reasons already discussed above, then moves the Court "alternatively to remand this action to arbitration." *Id.* at 2. In the memorandum of law, the relevant subject heading is "MOTION TO DISMISS WITH PREJUDICE AND COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT ('FAA'), 9 U.S.C. §§ 1 *ET SEQ.* AND THE REVISED UNIFORM ARBITRATION ACT ('RUAA'), 42 PA.C.S.A. §7304(A), [*sic*] BECAUSE THIS MATTER BELONGS IN ARBITRATION."[9] The body of the section does not seek an order to

---

[9] GRH refers to the Revised Uniform Arbitration Act with the citation 42 Pa.C.S. § 7301 *et seq.* and § 7304(a), but it conflates the (unrevised) Uniform Arbitration Act (UAA), of which those are both sections, with the Revised Statutory Arbitration Act (RSAA), *id.* § 7321.1 *et seq.* The latter act applies to agreements after 2019. *Id.* § 7321.4. GRH does not offer argument about whether the Pennsylvania law or FAA controls procedure or substance here. Given my ruling, I do not reach the issue.

compel arbitration, however, instead exclusively laying out that it would be *Kreider*'s right. Here is the text of the section in full:

> Considering the parties' agreement, Section 13(e), requires GRH and Kreider to settle disputes by negotiation or else resolve them through arbitration (Amended Complaint, ¶158). If he is not satisfied with GRH's level of participation the appropriate course of action for Plaintiff is not to file a second action. Rather, **Plaintiff is allowed to compel participation** in an arbitration matter pursuant to The Federal Arbitration Act ("FAA"). Under 9 U.S.C. § 4, **Plaintiff can motion the Court** to seek "an order directing that such arbitration proceed in a manner provided for in such agreement." Similarly, pursuant to the Revised Uniform Arbitration Act ("RUAA"), which Pennsylvania has codified as 42 Pa.C.S.A. § 7301 *et seq.*, [*sic*] **Plaintiff's remedy** is an application to the Court seeking an order to compel the opposing party to proceed with arbitration. See, 42 Pa.C.S.A. § 7304(a). **Plaintiff, having already filed his arbitration action, could have proceeded to seek an Order** compelling GRH's involvement in the arbitration. Accordingly, this action should be dismissed with prejudice and the first-filed arbitration should resume.

GRH Memo. 9–10 (emphasis provided). GRH focuses entirely on the "Plaintiff's remedy," but it does not address whether the FAA (or RUAA) offers it a remedy as well. Finally, the proposed order offers one sentence to grant dismissal, not a stay. ECF 13-1.

For his part, Kreider reads GRH as having made a motion to return the case to arbitration, focusing his argument instead on why that motion should be denied. Kreider argues that "the facts introduced in the pleadings and further demonstrated in this opposition place the agreement to arbitrate squarely at issue" and further that "GRH is not entitled to enforce its arbitration agreement." Resp. to GRH 11.

However, GRH in reply strongly implies that it is *not* making its own motion to compel arbitration, referring repeatedly again to Kreider's prerogative to do so. It will serve again to reproduce this section in full, which appears under the heading "GRH'S MOTION TO DISMISS THE ACTION IS MADE UNDER THE APPLICABLE STANDARD."

> In its opening papers in this motion GRH has presented law that venue and jurisdiction in this court are improper because there is a controlling, undisputed, contractual arbitration agreement. By nature of the arbitration agreement, GRH is

not subject to this Court's personal jurisdiction related to matters arising from the contract, particularly when it has already been decided, as here that the matter indeed belongs in arbitration. As was established, "[b]y Order dated August 6, 2024, the arbitrator determined that the AAA was the proper venue for the dispute." (Amended Complaint, ¶184.) This Court is the appropriate venue to determine whether the matter relates to the contract, but otherwise, "whether moving party [*sic*] is right or wrong is one of contract interpretation for the arbitrator." <u>See</u>, <u>Association of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp.</u>, 283 F.2d 93 (3d Cir. 1960) [citation cleaned up]. However, fundamentally, **this Court need not decide whether arbitration is the appropriate place** because the parties have agreed to it, the Plaintiff has already chosen it, and, to be fair, the arbitrator has determined it as well. **Defendants agree with Plaintiff' [*sic*] choice. Whether GRH should have additionally moved on the [*sic*] basis or Rule 12 (b)(6) is procedural and the Court can determine whether the matter should be dismissed on that basis**.

Plaintiff's argument that GRH should have moved pursuant to Rule 56 to compel arbitration is a red herring. **The appropriate course of action under the FAA and RUAA is for the Plaintiff to discontinue this action and file its own Rule 56 motion or petition to compel arbitration, not the other way around**. Plaintiff, having already filed his arbitration action, has the available remedy to seek an Order compelling GRH's involvement in the arbitration. Accordingly, this action should be dismissed with prejudice and the first-filed arbitration should resume.

GRH Reply 7–8 (underlining original, bold emphasis added). *See also id*. at 11–12 (stating under heading "There Has Been No Waiver" that "[t]he Defendant here is not simply declining to waive arbitration[.] Defendant is **specifically requesting that the arbitration proceed in place** of this action. . . . Accordingly, this action **should be dismissed with prejudice** and the first-filed arbitration should resume" (emphasis provided)); *id*. at 13 (stating under heading "Collateral Estoppel Applies and This Court Can Order the Matter to Resume in Arbitration" that "this Court could choose to . . . **collaterally estop this case**, and **allow** the matter to be litigated in [a]rbitration where it belongs anyway," offering additional doctrines for dismissal, and again concluding by asking for dismissal (emphasis provided)); *id*. at 17 (concluding by asking for dismissal on several grounds "or alternatively that the matter against [GRH] be remanded to arbitration . . . and for the other relief requested herein.").

Under *Henry*, I must consider the substance over the form of this motion when deciding whether it should to be construed as a motion to compel arbitration under the FAA. GRH's filings provide some ambiguity, but in substance they seem to me to intentionally avoid demanding arbitration. First, the filings principally invoke the FAA in their headings rather than in argument, where they are bereft of further substantive argument or authorities. The content of headings, without more, would seem to be just the kind of formality that I should disregard under *Henry*. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (arguments made "in passing," including even arguments with authority supplied in a footnote, may be deemed forfeited by a district court). Second, GRH's briefing almost exclusively discusses the remedy of compulsion as belonging to the *plaintiff*, as if daring Kreider to take advantage of the right rather than claiming it for itself as well. Third, despite referring directly to the texts of §§ 3 and 4 of the FAA specifically, the filings repeatedly demand *dismissal* rather than a *stay*, although the latter is the only remedy on offer under those sections. Fourth, where GRH comes closest to moving on its right to a stay, it explicitly refers to the question as "procedural" and then *declines to take a position*, leaving the matter to the Court. GRH Reply 8 ("Whether GRH should have additionally moved on the [*sic*] basis or Rule 12 (b)(6) is procedural and the Court can determine whether the matter should be dismissed on that basis," referring apparently to the FAA as "the basis").

I find that these reasons sufficiently prove that the substance of GRH's motion, although not necessarily the form, indicate that I should not construe it as a motion to compel arbitration.

### ii.   The Merits of GRH's Demand at This Level

In the alternative, if I did construe GRH's motion as compelling arbitration, I would deny that motion. At this stage, the Court would first determine whether such a motion could be decided on the pleadings under the Rule 12(b)(6) standard or with further evidence under the Rule 56 standard. *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Once

one party moves to compel, the non-moving party may respond with facts that reasonably "place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. With the agreement sufficiently at issue, the Court "may order limited briefing and discovery on the issue of arbitrability, then assess the question under the summary judgment standard." *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017) (clarifying some ambiguity in *Guidotti* about when to apply different standards). Here, it is obvious from the face of the complaint that an arbitration agreement existed, but also that the force of that agreement is squarely in question.

In offering the remedy of a stay pending arbitration, the FAA includes the criterion that "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Further, the relief offered by the FAA is only available upon the Court's satisfaction that "the failure to comply" with the arbitration clause is "not in issue." *Id*. § 4. Where "the failure, neglect, or refusal to perform [arbitration] be in issue, the court shall proceed summarily to the trial thereof." *Id.*

Several related doctrines, including breach, waiver, and default, put the force of the arbitration agreement in question.[10] First, as Kreider argues, GRH breached the agreement by failing to arbitrate in the first place, even after the arbitrator ruled on its somewhat implausible argument that the agreement did not refer to the AAA. *See Trumbull Corp. v. Boss Const., Inc.* 801 A.2d 1289 (Pa. Commw. Ct. 2002) ("[W]hen a party to a contract seeks to enforce the agreement . . . that party must prove that he has performed all his own obligations under the contract."). Courts

---

[10] A fourth doctrine, although probably not yet in play, is forfeiture, "the failure to make the timely assertion of a right, an example of which is an inadvertent failure to raise an argument." *In re Aquilino*, 135 F.4th 119, 129 n.6 (3d Cir. 2025). GRH's own non-moving or moving only "in passing" to compel arbitration may itself have functionally forfeited the issue going forward. *See Khan v. Parsons Global Services, Ltd.*, 521 F.3d 421, 428 (D.C. Cir. 2008) (defendant who requests arbitration only in the alternative "takes the risk" that the court's ruling will preclude its later seeking arbitration).

may refuse to compel arbitration where the movant was in breach of that agreement. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (finding employer to have breached arbitration agreement by failing to arbitrate with employee, affirming denial to compel, and reasoning that an alternate ruling could incentivize parties to strategically default at arbitration).

The same facts might also make out waiver of that right. Waiver "is the intentional relinquishment or abandonment of a known right." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (cleaned up). Where a movant knew of its right to arbitrate but refused to arbitrate upon being served with notice thereof, as was the case here, that would be sufficient to find waiver. *Brown*, 430 F.3d at 1012.[11] GRH's inaction during arbitration certainly sounds like "default in proceeding with such arbitration" under 9 U.S.C. § 3, which would preclude an order under § 4.

GRH's motion to compel arbitration could not survive at the Rule 12(b)(6) standard, where I must accept the pleadings factual allegations as true and make reasonable inferences in the plaintiff's favor. It is reasonable to infer from the complaint that GRH breached its own arbitration clause, that it waived that right, or that it was in default. I lack the full facts to make such a determination, and GRH offered no additional evidence itself that would have permitted me to consider the motion under the Rule 56 standard. *See* Fed. R. Civ. P. 12(d). Neither party has moved for summary judgment.

---

[11] Note that *Brown* analyzed waiver as also requiring a showing of prejudice, but the Supreme Court later held in *Morgan v. Sundance, Inc.* that waiver with arbitration works just in any other contract clause, *i.e.*, without requiring such a showing. 596 U.S. 411, 413 (2022).

### C. GRH's Motion to Dismiss (Rather Than Compel)

Since I have ruled that GRH did not move to compel, or in the alternate that I would not grant such a motion, I can reach the merits of GRH's motion under Rule 12(b)(6).

#### i. Scope of the Motion

There is one last procedural matter. I must determine the scope of GRH's motion. As noted above, separate motions (with separate briefs and proposed orders) were filed by Defendants' counsel, who represents both GRH and the individual defendants. I take counsel to have tried to logically separate the issues, but the result has left an ambiguity: Is GRH moving to dismiss any counts against it besides Count III for reasons other than the threshold issues already addressed? As will become clear, the question is whether GRH is a joint movant with the individual defendants' motion.

The first set of filings (ECF 13, 13-1, and 13-2) is clearly made on behalf of GRH only, based on its caption, introduction, proposed order, and the style and content of the memorandum of law. The lead filing on behalf of GRH moves to dismiss on several grounds, including failure to state a claim. It includes several savings clauses, asking for relief "on all other bases as articulated in the accompanying memorandum of law . . . and based on all of the applicable arguments raised in the Motion to Dismiss filed by Co-Defendants Robin Bieber and Robin Nellius . . . ." GRH Mot. 2. In its memorandum, beyond the threshold issues already addressed, GRH offers argument only on Count III (breach of contract). Notably, GRH at no point moves to dismiss Count IV (breach of express and implied warranties, against it only).

The movant on the second set of filings is not as obvious, because the motion text itself begins by including GRH as a defendant on whose behalf it is filed. Nevertheless, an abundance of context indicates that this is nothing more than a drafting error. The same motion is captioned "DEFENDANTS BIEBER AND NELLIUS'S MOTION," and it concludes by referring only to

18

those two defendants moving to dismiss the relevant counts against them. Similarly, the proposed order refers to the motion by the same title and proposes only that the Complaint "against Defendants Bieber and Nellius [be] dismissed." ECF 14-1. The memorandum of law 1) introduces only "Defendants Bieber and Nellius," 2) has a preliminary statement that refers only to moving to dismiss against those two, and 3) in conclusion, specifically refers to "the moving defendants" and requests dismissal against only Bieber and Nellius. As mentioned above, the motion at ECF 13 refers to the motion at ECF 14 as "the Motion to Dismiss filed by Co-Defendants Robin Bieber and Robin Nellius," and the docket confirms that ECF 14 was filed only on the individuals' behalf. For these reasons, while the body of the motion begins by including GRH, I read this in the context of the other filings as far more likely to be a drafting error than intentional.

Since I conclude that only the motion at ECF 13 was filed on GRH's behalf, and because I have already ruled that the motions may not incorporate each other's briefing, I conclude that GRH's motion to dismiss seeks only to dismiss Count III on the merits.

### ii. Breach of Contract (Count III)

GRH moves to dismiss the breach of contract claim against it under Count III. According to that count, "GRH failed to substantially complete construction of the Home within 180 days, charged more than the agreed-to amount without justification, and failed to meet the specifications provided under the Agreement." Compl. ¶ 205. Additionally, "GRH failed to participate in arbitration after compelling Kreider to initiate arbitration at his own cost." *Id.* ¶ 206.

GRH does not offer any discussion or standards for dismissal under Rule 12(b)(6). Under Pennsylvania law, a plaintiff asserting a breach must assert the existence of the contract, a breach thereof, and the resulting damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (Pa. 2016). "In general, when a party fails to satisfy an express contractual obligation, the lack of performance is a breach" of that obligation. *John B.*

*Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 707–08 (Pa. Super. 2003). But failure to perform an obligation is not the only mode of breach. Delay in performance itself is generally a material breach where, as here, "[t]ime is of the essence." Delay in performance, 23 Williston on Contracts § 63:18 (4th ed.); Compl. Ex. A at 16, ¶ 23.a., ECF 12-1 at 17 (provision in this contract that "[t]ime is of the essence, except as otherwise provided.").

Rather than making arguments at the Rule 12(b)(6) stage, GRH offers a general theory of defense, like that the contract included provisos permitting extensions of time and changes in price that could explain and excuse its conduct. It also argues that Kreider "has not plead or demonstrated that any specific clause of the contract" was breached, or that the cause of the harms was the breach. GRH Mot. 13. In response, Kreider offers paragraph ranges and attachments for the contract provisions and each of the claimed breaches. Resp. to GRH 19–20. GRH gives only a brief reply on this point, characterizing the price and duration terms of the contract as mere "preliminary good faith estimates." GRH Reply 15.

I deny the motion as to Count III, because I find that the complaint sufficiently states a claim for breach of contract to move forward to discovery. GRH's arguments amount to defenses it would make against that claim, but not reasons why the complaint's factual matter, taken as true, does not sufficiently make state a claim.

### D.  Failures to State a Claim Against Bieber and Nellius

The individual defendants raise several grounds to dismiss all of the counts against them.

#### i.  Gist of the Action (All Counts against Bieber and Nellius)

Bieber and Nellius first argue that the counts against them are barred by the "gist of the action" doctrine, under which a plaintiff is precluded from "re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advertising Inc.*, 811 A.2d 10, 14 (Pa. Super.

2002). The difference between contract and tort is that the obligations under contract originate in the mutual consensus reached by the parties, whereas tort draws on "social policy." *Id.* The Pennsylvania Supreme Court gave a historical progression of gist doctrine in *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 99 (2014), in which it offered some guidance on where claims may be teased apart and where the alleged torts are interwoven into the contract. Noting that the state's two intermediate appellate courts seemed to follow three different approaches between them, *Bruno* held that it was only "the nature of the duty alleged to have been breached" that would be "the critical determinative factor." 630 Pa. at 112. Thus, where the duty breached is "a broader social duty owed to all individuals" then it will be permitted to proceed sounding in tort. *Id.* Therefore, even actions taken to advance contractual obligations may be challenged in tort where they are negligent in exercising reasonable care, even to the other contract party. *Id.* at 114. Bieber and Nellius therefore argue that Kreider has "not raised any claim alleging any conduct arising outside the performance of the agreement." Individual Defs' ("Indiv.") Memo. of Law 8 (ECF 14-2 at 11). They cite the Superior Court's holding in *eToll*, which considered the application of gist doctrine when the action also includes allegations of fraud, concluding in that case that Pennsylvania law did not permit the additional fraud counts.

As an initial concern, Kreider claims that the Gist of the Action doctrine is only available to the contracting parties, as Bieber and Nellius concede they are not. Bieber and Nellius reply that "[t]he Third Circuit has consistently held" that gist applies for a contracting party company's officers as well, citing *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 387 (3d Cir. 2004) and two unreported district court cases. Indiv. Reply 7. *Williams* is a non-precedential split decision, and I do not see evidence that it has been followed consistently. In *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 41 (3d Cir. 2015), the Third Circuit did not overturn a district court's ruling that

defendants properly constituted the "alter ego" of the contracting company, citing one district court case. It also noted also that the plaintiff, like Kreider, lacked authorities to the contrary. *Id.* In the present case, the complaint alleges on information and belief that Bieber and Nellius are the only members of GRH, but it also specifies that they, rather than it, were responsible for fraudulent inducement prior to the contract.

Beyond that procedural issue, Bieber and Nellius argue in substance that "Plaintiff has not alleged that Bieber or Nellius had an obligation to Plaintiff outside of the performance of GRH's contract with Plaintiff as its agents." Indiv. Reply 7. Every case in which gist has *not* barred torts proves the opposite. For instance, *Bruno* held that contractors are bound by their contracts, but also by general social policy, and if they commit torts beyond the scope of their contracts, they are tortfeasors. *Bruno*, 360 Pa, at 116 (allegations of negligence "facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by" the contract itself). Although there was reason to question whether fraud, including fraudulent inducement, might be treated differently under gist after *eToll*, there is nothing about *Bruno*'s logic that would cabin its holding as such. Notably, in *Earl v. NVR, Inc.*, 990 F.3d 310, 315 (3d Cir. 2021), the Third Circuit considered Pennsylvania law as it had changed since *Williams* to hold that gist did *not* bar tort claims arising from inducement prior to a contract.

Finally, Kreider argues that Counts I and II arise from consumer protection statutes that "provide additional protections beyond those provided by contract law." *Henry v. PNC Bank, NA*, 31 Pa. D. & C. 5th 101 at *6 (C.P. Allegheny 2013). The fact that gist does not cover statutory claims is implicitly conceded by Bieber and Nellius in reply, as they rely on unrelated arguments for dismissal under the heading of dismissing for gist.

Even if gist may be asserted by Bieber and Nellius as non-parties to the contract as to the other counts, I decline to dismiss them. Under the present allegations, wherein they are accused of an ongoing fraud that preceded the contract, and at the present pleading standard, the complaint sufficiently raises the inference that this fraud arose outside of and collateral to the contract under *Bruno*.

      ii.   Sufficiency of Pleadings as to Fraud and Negligence (Counts I, V, VI)

Bieber and Nellius argue that the pleading of fraud and negligence is insufficient because those allegations are held to a higher standard. Under Fed. R. Civ. P. 9(b), the pleader "must state with particularity the circumstances constituting fraud or mistake." According to their header, although not the brief body of their argument, the complaint contains "only self-serving and boilerplate allegations." Indiv. Memo. 9 (un-capitalized). They do not go on to object to any allegations in particular, but in reply they write, "For example, Plaintiff claims that the allegation that 'Defendants made knowingly false statements at the time the Agreement was signed regarding the time and price of the project' (AC ¶¶ 26-28) is sufficiently specific." Indiv. Reply 6. [12] In reply,

---

[12] Two important observations about quotations in Bieber's and Nellius's briefing: First, the time to paraphrase is emphatically *not* when characterizing an opponent's claims inside quotation marks—particularly if you are arguing about the opponent's language. The words Bieber and Nellius ascribe to Kreider in his complaint *summarize* but do not reproduce actual words in Kreider's complaint, amended or original.

      Second, it is very important to pay attention to the quotations you ascribe to a court, particularly a binding authority. The same briefing includes the following sentence:

> As argued above, "allegation [*sic*] of fraud must explain the nature of the claim to the opposing party so as to permit the preparation of a defense and be sufficient to convince the court that the averments are not merely subterfuge." <u>Lum v. Bank of America</u>, *supra.*

Indiv. Memo. 12. (emphasis in original). The quoted material does not appear in *Lum*. One reading of the sentence might be that the brief quotes its own prior argument and then cites *Lum*, but the quoted material also does not appear "argued above." The quotation appears to come from *Martin v. Lancaster Battery Co. Inc.*, 530 Pa. 11, 18 (1992)—where it concerned the *Pennsylvania*, not federal, pleading standard.

they write that "[t]he reader is not able to see more than from a blurry and vague bird's eye view what was fraudulent, or what was a misrepresentation." Indiv. Reply 6.

I am not persuaded by Bieber's and Nellius's brief argument. Kreider was sufficiently specific in his allegations of fraud. As Bieber and Nellius themselves point out, the Third Circuit has explained that allegations of "date, place or time" of the fraud are sufficient, although not necessary, "means of injecting precision and some measure of substantiation into" the allegations. *Lum*, 361 F.3d at 224. The complaint offers a lengthy recitation of the context and substance of communications that sufficiently put Bieber and Nellius on notice of the concerning conduct. Although some dates are approximated, there is little question as to the scope and content of what is at question, particularly as Kreider repeatedly cites specific figures and invoice numbers. *E.g.* Compl. ¶¶ 38–44 (unsubstantiated 35% increase in module which Defendants misrepresented as 29% increase, with invoice number and approximate date). To the extent that either individual defendant is concerned that they are being treated jointly with each other rather than individually, they have not raised that objection even notionally.

Bieber and Nellius further do argue that the complaint "does not demonstrate that Bieber or Nellius individually and outside of GRH were negligent or committing fraud, because they do not have any duties under the contract that they could breach or neglect." This concern repeats the failed argument under gist and is irrelevant to the discussion of specificity.

iii.   Time Bar (Counts V and VI)

Nellius and Bieber claim that Counts V and VI must be dismissed because they are time-barred in Pennsylvania under 42 Pa.C.S. § 5524(7). They also claim that any negligence alleged before August 2022 should be time-barred, presumably because that is two years before the filing

24

of this case. These claims are made summarily and without further citations to authority. Kreider responds that time bars are an affirmative defense, and the burden to establish it rests with the defendant. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985). Furthermore, the "discovery rule" allows tolling for periods in which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured. *Fine v. Checcio*, 582 Pa. 253, 266 (2005). Where the issue involves questions of fact, the issue will decided by a jury. *Id.* at 268.

This affirmative defense has not been established by the individual defendants, who reserved the heft of their argument for the reply brief. As Kreider argues, the allegations offer plenty of factual basis to believe that Kreider innocently believed himself to be dealing with normal frustrations in the course of home construction. Bieber and Nellius's reply that "[s]imply invoking the discovery rule here is not sufficient" and that the discovery rule "does not apply as a matter of law," misunderstand their burden.[13] If the limitations issue is not clear from the face of the complaint, it will not serve as the basis for a dismissal under Rule 12(b)(6) in this Circuit. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

iv.   Choice of Law and the Governing Law Clause (Count I)

Bieber and Nellius claim that Count I under the Maryland Consumer Protection Act (MCPA) and Maryland Custom Home Protection Act (MCHPA) must be dismissed based on the agreement itself. These Maryland statutes provide a variety of safeguards for anyone contracting for construction of a single-family home, requiring certain disclosures and protections for

---

[13] In their reply brief, Bieber and Nellius argue for the first time for applying the time bar to Count II. (They again fail to include Count II when requesting dismissal based on the time bar.) I may disregard as forfeited arguments made for the first time in reply. *United States v. Lara-Mejia*, 482 F. Supp. 3d 281, 316 n.9 (M.D. Pa. 2020).

payments made to contractors, among other things. *E.g.*, MD. REAL PROP. §§ 10-504 to -507. The agreement states at ¶ 23.c., "Governing Law. This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania." ECF 1-1 (emphasis in original). Bieber and Nellius object that these Maryland statutes, which are not the law of Pennsylvania, should not govern. As a federal court sitting in Pennsylvania, I must apply this state's rules for choice of law. *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Generally, Pennsylvania's is a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21 (1964).

Bieber and Nellius do not argue that the governing law clause decides the matter. Instead, they briefly argue that because the Plaintiff lives in New York and Defendants are Pennsylvanian, "[i]f there is to be a dispute about the applicable law, the remedy is a balancing test to decide whether to apply Pennsylvania or New York law." Indiv. Memo. 12. Although they mention the governing law clause, they do not argue that it is sufficient, except inasmuch as it implicitly weighs in my balancing—between Pennsylvania and New York law, since they claim without authority that Kreider "cannot sustain a claim brought under Maryland law." *Id*. Instead, they argue that "the only link to Maryland is the Plaintiff's parcel of land and the Contract directs that Pennsylvania law apply." *Id.* They do not address the fact that the governing law clause is in an agreement to which they are not (directly) parties.

Kreider responds that this argument ignores or even makes light of the facts alleged: As pleaded, Kreider resided at the premises in question prior to the demolition and partial reconstruction. It had been his family's home since 1973, and he lived there for nearly 30 years prior to this agreement. He left the home because of the construction and has been unable to return home since then. Kreider offers citations to Maryland case law and statutes describing the purposes

of the MCPA and MCPHA pertinent to the present facts. He too offers little argument on the governing law clause.

In reply, Bieber and Nellius claim that Kreider made no citation to controlling law, despite Kreider having at least offered both statutes and cases on the purpose of the Maryland laws; they themselves had offered nothing but general standards. They refer to Kreider's argument as "incoherent," and they refer to Kreider—the man who is suing to get back to his own long time family home in Maryland—as a New Yorker who "could have remained in Maryland during the construction if he wanted to, rather than relocate." Indiv. Reply 3–4 & n.1.[14]

Based on Pennsylvania's flexible choice of law rule, Defendants' lack of argument as to the governing law clause's control, and the present complaint, I will not dismiss Count I. Where a longtime Maryland resident contracts to demolish and rebuild his Maryland home, and in view of Maryland's law specifically regulating just such a contract, I find that state's policies and interest are more central than Pennsylvania's. Bieber and Nellius were not themselves parties to the agreement and therefore cannot directly rely on its force to fulfill any expectations they had beforehand.[15] Even if they could, "[f]ulfillment of the parties' expectations is not the only value in

---

[14] Bieber and Nellius then shift in the reply to arguing that Kreider's claim would fail under the Pennsylvania consumer protection statute as well. As this argument is raised for the first time in the reply, I treat it as forfeited and deny it. *Lara-Mejia*, 482 F. Supp. 3d at 316 n.9.

[15] I have denied the motion as to Count I, and the parties have not moved me to rule on which state's laws will apply to the other counts. Neither motion to dismiss reached the merits of the Pennsylvania statutory claim in Count II (Bieber's and Nellius's attacked the specificity of pleading but not the law's application), and only Bieber and Nellius moved to dismiss the Maryland statutory claim in Count I. "[C]hoice of law analysis is issue-specific" and therefore "different states' laws may apply to different issues in a single case" under the doctrine of dépeçage, *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). I doubt that Kreider will argue that his claims under Count I and Count II refer to different issues, but I would need to revisit the choice of law questions with more briefing before trial.

contract law; regard must also be had for state interest and for state regulation." Restatement (Second) of Conflict of Laws § 187 cmt. g. (Am. L. Inst. 2024). The Court may refuse to apply the chosen law "to protect a fundamental policy" of the state that would govern in the absence of a choice of law provision, if that state "has a materially greater interest than the state of the chosen law in the determination of the particular issue." *Id.*

v.    Adequacy of Law In Lieu of Equity (Counts VII and VIII)

Finally, Bieber and Nellius move to dismiss the counts of unjust enrichment and legal and equitable accounting. They argue that because there was a contract, equitable causes of action are inapplicable—but also, because Bieber and Nellius were not parties to the contract and received payments that "only benefitted Green Robin Homes," there is simply "no basis for a cause of action" against them. Indiv. Memo. 13.

To show unjust enrichment, "a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908 (Pa. Super. 2017) (*en banc*). While the parties agree on its definition, Kreider maintains that the individual defendants' "insistence that they were not enriched by fraudulently receiving over $600,000 from Mr. Kreider is a factual issue." Resp. to Indiv. 23. In reply, Bieber and Nellius simply offer authority for the proposition that the count "does not apply where a written or express contract exists." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp.3d 476, 494 (E.D. Pa. 2016). But this authority does not have anything to offer about where the claim is against a non-party to the written contract. As *Whitaker* explains, unjust enrichment is pleaded as a companion to a claim of other unlawful conduct, "e.g., a tort claim." *Id*. In *Whitaker*, the claim was dismissed precisely because the tort was dismissed. *Id.* at 495. Bieber and Nellius offer no reason why the converse should not obtain, *i.e.*, why unjust enrichment should not survive where the torts with which it is associated do not survive. In any

28

event, I find that the complaint alleges factual content sufficient to raise the reasonable inference that Bieber and Nellius benefited personally from the conduct underlying the unjust enrichment, and the matter cannot be disposed at this level.

As for legal and equitable accounting, Bieber and Nellius argue again that because this is a contract action, there is a remedy at law. They also argue that the pleadings do not adequately demonstrate that the "accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Kreider responds that a legal accounting is "not a claim, but a demand for relief." *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp.3d 378, 387 (E.D. Pa. 2019). He cites authority for a plaintiff's entitlement to a legal accounting where a breaching contractor ". . . failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him . . . ." *Id.*

An equitable accounting is available where the allegations include fraud or misrepresentation. *Baird v. Macklin*, 6 Pa. D & C 5th 193, 204 (Pa. Com. Pl. Beaver 2008). A plaintiff "may assert a separate action for an accounting in equity, provided there is a sustainable underlying equity claim." *Id.* Defendants' alleged unwillingness to provide an accounting pre-suit and nonparticipation at arbitration at least indicates the possibility of the inadequacy of a remedy at law. For now, I deny the motion to dismiss on this basis.

### E.  Attorney's Fees

GRH moves additionally for an award of attorney's fees. It cites a provision in the agreement, Section 14(a): "If a party files suit with a court under this Agreement when the dispute is required to be resolved using arbitration under this section, then the filing party that violated the requirement shall reimburse the non-filing party for its reasonable attorneys' fees." ECF 12-1 at

12. GRH then moves for both attorneys' fees *and costs*. Kreider hardly responds, ridiculing the "absurd idea that he, rather than GRH, failed to comply" with the arbitration clause.

The agreement itself provides for attorneys' fees, not Pennsylvania law. That is, Pennsylvania courts have long followed the American rule, and "there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." *See, e.g.*, *Merlino v. Delaware Cnty.*, 556 Pa. 422, 425 (1999). By arguing for fees off a provision of the contract, GRH is essentially pressing a counterclaim without filing one. Without deciding the ultimate propriety of ordering fees, I deny the motion at this time.

## IV.  <u>CONCLUSION</u>

For the reasons above, I deny GRH's and the individual defendants' motions to dismiss.